**In re Blenda Joice RAINWATER, Debtor.**

**In re Cheryl Ann WHITE, et al., Debtors.**

**BILL PARKER & ASSOCIATES, Appellant,**

**v.**

**William M. FLATAU, Trustee, Appellee. (Two Cases)**

**Civ. A. Nos. 89–42ATH (DF), 89–43–ATH (DF).**

United States District Court, M.D. Georgia, Athens Division.

Jan. 25, 1991.

As Amended Jan. 29, 1991.

Anne Martin, Athens, Ga., Robert E. Dunn, Bill Parker & Associates, Atlanta, Ga. for debtors.

William Flatau, Macon, Ga. trustee.

Mark Roadarmel, Office of the U.S. Trustee, Macon, Ga.

## ORDER

FITZPATRICK, District Judge.

■■ Pending before the court are two bankruptcy appeals. Case number 89–42–ATH(DF) is an appeal by Bill Parker & Associates (Bill Parker) from a ruling of the bankruptcy court, Honorable Robert F. Hershner, Jr., presiding, concerning that firm's representation of Blenda Joice Rainwater. 100 B.R. 615. Case number 89–43–ATH(DF) is an appeal from a ruling by Judge Hershner concerning Bill Parker's representation of Roger Hugh and Cheryl Ann White. 100 B.R. 619. Since these appeals involve identical parties and issues

and practically identical facts and pleadings, with only the Debtors in the underlying cases being different, the court will consider them together even though they have not been formally consolidated. On appeal, the bankruptcy court's findings of fact are not to be set aside unless clearly erroneous, but questions of law may be examined freely. Bankruptcy Rule 8013; *see also, State Farm Mutual Auto Ins. Co. v. Fielder*, 799 F.2d 656, 657 (11th Cir.1986).

## I. BACKGROUND

Blenda Joice Rainwater contacted Bill Parker, based upon an advertisement in a telephone directory, seeking to file a bankruptcy petition under Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* She spoke over the telephone with Mr. Robert Dunn, a Bill Parker Attorney, who sent her a questionnaire which she completed and returned. Mr. Dunn decided that Ms. Rainwater should file under Chapter 7 of the Bankruptcy Code rather than Chapter 13, and so sent her another set of forms. After the returned forms were reviewed by Mr. Dunn, a secretary transposed the replies to the appropriate petition. (Transcript, pp. 122–23) The petition was then sent to Ms. Rainwater to sign, after which it was sent to Anne Martin, an associate, who signed it without verifying any of the information it contained as she believed that someone else had done so. (Transcript, pp. 121–24, 54, 67–68). The only verbal communication with Ms. Rainwater consisted of a series of phone calls totalling 20–25 minutes. (Transcript, p. 47). The first and last meeting between the Debtor and any Bill Parker attorney took place at the meeting of creditors required by 11 U.S.C. § 341. (Transcript, p. 38). Ms. Rainwater agreed to pay Bill Parker a fee of $510.00, of which $300.00 was actually paid.

At the § 341 meeting, Mr. William M. Flatau, the Chapter 7 Panel Trustee, noted the following falsities, omissions, errors and misleading statements in the Debtor's Chapter 7 petition:

1. Questions 12–15 on the Statement of Affairs are illegible.

2. The question concerning contacts with attorneys was answered in the negative when in fact such contacts had been made.

3. The question asking whether any property had been transferred to an attorney was answered in the negative, when in fact payments had been made to Bill Parker.

4. The Debtor's car was originally valued at $10,000.00, then $1,000.00 and then claimed as exempt when in fact $5,231.16 was owed on the vehicle.

5. No attorney explained to the debtor the difference between a Chapter 7 and a Chapter 13 bankruptcy petition.

(Transcript, pp. 87–90, 110).

After the meeting, the Trustee filed a motion to examine the payments made to Bill Parker on the grounds that they were excessive. Judge Hershner conducted a hearing as allowed by Bankruptcy Rule 2017(a), (b), and issued an order under 11 U.S.C. § 329(b) (West Supp.1990) denying Bill Parker an award of attorneys' fees and declaring the amount still owed by the Debtor forfeited to the Trustee. The court further imposed a sanction of $1,000.00 against Bill Parker based on Bankruptcy Rule 9011. The Debtor was discharged after the hearing was held but before the court's order was issued.

Case number 89–43–ATH(DF) involves essentially the same facts only with different Debtors. Roger and Cheryl White also contacted Bill Parker about filing a bankruptcy petition, and their case was handled using the same procedure as described above. At the § 341 meeting, again the first and last meeting between the Debtors and their attorney, the Trustee noted the following errors in the bankruptcy petition:

1. A question concerning payments to creditors was answered in the negative when the answer should have been "yes."

2. The answer given to question 13 on the Statement of Affairs is in fact the answer to question 12.

3. The question concerning payments to attorneys was answered incorrectly.

4. The schedules conflicted about the debtor's assets.

5. A question about cash on hand was not answered at all.

6. The figure given for house proceeds was much less than the original amount.

7. The statement of intent was not signed.

8. Locations of items on one schedule were omitted.

9. The petition, summary of assets and notice to individual consumer debtors were not dated.

10. No value was given for a listed solar water heater.

(Transcript, pp. 14–17, 55–56, 61–62).

The court held a hearing at the Trustee's motion and decided that the $510.00 paid by the Debtors was an excessive fee under Bankruptcy Rule 2017(a), (b), and 11 U.S.C. § 329(b) (West Supp.1990), ordered that the amount of the fee still owed by the Debtors be forfeited to the Trustee and imposed a sanction of $95.00 against Bill Parker under Bankruptcy Rule 9011. The Debtors in this case were also discharged.

Bill Parker and the Trustee have since filed identical motions and briefs for appeal in both cases, and so the court will consider them together. The Trustee has asked this court to declare Bill Parker's appeals frivolous, and to order that firm to pay him $3,203.50 in attorney's fees for the time spent answering the appeals. Lastly, the Trustee has moved to strike Bill Parker's reply briefs.

## II. DISCUSSION

While following Bill Parker's convoluted briefs, with their numerous spelling and grammatical errors and lack of structure, has been difficult, the court will attempt to answer each basis of the appeals in sequence. The first two grounds for appeal concern whether Bankruptcy Rules 2017(a) and (b) can be used as a basis for sanctions for non-substantive errors and, in the case of Rule 2017(a), to scrutinize non-monetary transfers between debtors and their attor-

neys.[1] The firm claims that Rule 2017 was never intended to apply to situations such as in this case, the notice given was insufficient, any errors in the petitions were immaterial, typographical mistakes which did no harm since the debtors ultimately received discharges, and that the Trustee and Judge Hershner incorrectly criticized the methods by which the firm practices law. After examining the briefs and the record of each of these cases, the court is convinced that the bankruptcy court made no error as to these grounds.

Bankruptcy Rule 2017 provides:

**(a) Payment or Transfer to Attorney Before Commencement of Case.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive.

**(b) Payment or Transfer to Attorney After Commencement of Case.** On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

■ The Advisory Committee Note given after Rule 2017 states that it is intended to address the problem of failing debtors who deal too liberally with their attorneys while seeking protection through bankruptcy. The court believes that Rule 2017 does allow a bankruptcy court to examine the reasonableness of an attorney's fee, since a fee arrangement can easily be too generous given the nature of the services performed even though neither the debtor nor his attorney may intend for such overcompensation to occur. The bankruptcy court committed no error in applying Rule 2017 to determine whether Bill Parker's fee was too liberal when compared to the services rendered.

■ Bill Parker has challenged not only the applicability of Rule 2017, but the sufficiency of the notice given, as required by the Rule's subsections, in both cases as well. The notices were sent to Anne Martin, a Bill Parker associate. The court's first reason for rejecting this ground for an appeal is that if the notices given were insufficient Bill Parker should have raised that defense either at the hearing or in a written motion before the bankruptcy court. This court is not obliged to consider on appeal issues which should have been raised below but were not. Alternatively, it is quite obvious that Bill Parker had actual notice of the proceedings and their scope, as its attorneys deposed Mr. Flatau and were present at the hearing where they argued the issues. Additionally, given the working relationship between Ms. Martin and the firm, the court believes that sending notice to her constituted sufficient notice to the firm that its fees were to be examined for excessiveness. Bill Parker has no reason to claim that it lacked sufficient notice of the hearing.

■ Regarding the merits of the grounds for appeal, Bill Parker's main contention seems to be that since the Debtors ultimately received the discharge in bankruptcy which they sought, no harm was done by any errors or falsities in the petitions. This court is in complete disagreement. Any relief received by the debtors, as the Trustee notes in his brief before this court (pp. 5–6), was a result of the functioning of the bankruptcy system itself rather than of the efforts of any Bill Parker attorneys. Indeed, the Debtors are fortunate that the system was able to protect them from the mistakes of their own attorneys. The deficiencies of the petitions were in no way harmless, since if they had not been

---

**1.** Although Bill Parker raises the question of the applicability of Rule 2017(a) to non-monetary transfers, there appear to have been no such transfers actually made in either of these cases.

discovered by the Trustee, the Debtors could have been prosecuted for perjury under 18 U.S.C. § 152. Bill Parker contends that the mistakes were merely typographical errors, but their number and repetitiveness belies this claim. An examination of the mistakes listed above reveals that substantial misinformation was fed into the bankruptcy system by Bill Parker, and even though the Debtors obtained the discharges they sought that fact still remains.

■ Bill Parker next attacks both the bankruptcy court and the Trustee for criticizing the way the firm conducts its legal practice. This court feels that such criticism is entirely justified, since the methods employed by Bill Parker were directly responsible for the errors and falsities contained in the petitions. As one court has described the minimal standard for acceptable bankruptcy practice:

> ... This basic obligation surely connotes that the attorney has at least met with the debtor, discussed in some detail the financial background of the debtor and in turn reviewed certain basic records such as tax returns, bills or other evidence of indebtedness, and related financial information and documentation....

*In re Crestwell,* 30 B.R. 619, 620–21 (Bankr.D.C.1983).

The records in these cases show without a doubt that Bill Parker has not even come close to this standard. As stated above, the first and last face-to-face meeting between the Debtors and an attorney connected with Bill Parker occurred at the § 341 meeting with the creditors. Before that, all discussions between the two were limited to a few phone calls. Neither Anne Martin nor a Bill Parker attorney reviewed or investigated any of the information given by the Debtors, but instead apparently relied on laymen to correctly anticipate the intricacies of the bankruptcy system. The task of transcribing the information supplied by the Debtors was given to a secretary; it appears that the attorneys did absolutely nothing but sign the completed forms, and that they did this without even reading them. This kind of "mail order" method of practicing law, as Judge Hersh-

ner termed it (Rainwater Opinion, p. 9; White Opinion, p. 9), is completely unacceptable in a bankruptcy court or any other court.

■ Bill Parker makes a series of due process arguments, first claiming that due process was denied because the Trustee's motion was based on Federal Rule of Civil Procedure 11 rather than Bankruptcy Rules 9011 (upon which the bankruptcy court's rulings were based) or 105, and was thus too imprecise to give adequate notice. Federal Rule of Civil Procedure 11 and Bankruptcy Rule 9011 are practically identical, however, except where the latter rule has been modified to fit the needs of bankruptcy cases. Under the concept of notice pleading, Bill Parker cannot claim that it had no notion of the basis for the Trustee's claims, since the purpose of the motion was to make Bill Parker aware of the general nature of the charges against it, not to spell them out with particularity. The fact that the Trustee's motion was based on Rule 11 rather than Bankruptcy Rule 9011 could have done no harm. As discussed above, the record itself shows that the firm had notice of the proceedings, since Bill Parker attorneys deposed the Trustee and were present and ready to state their case at the hearing.

■ Bill Parker also claims that it was denied due process when its attorneys were not able to cross-examine the Trustee at the bankruptcy hearing. This claim has no merit, however, since Bill Parker attorneys thoroughly deposed Mr. Flatau prior to the hearings, at which Mr. Dunn stipulated that the deposition was to be incorporated into the record and that he had no further questions for Mr. Flatau. (Transcript, pp. 81, 125). If Mr. Dunn wished to cross-examine the Trustee at the hearings, he should have made some sort of request to do so then, rather than allowing the deposition to be made part of the record without any objection.

Next, Bill Parker lists what it contends are several clearly erroneous findings of fact by the bankruptcy court. None of these findings are clearly erroneous. For example, it was not error for Judge Hersh-

ner to state that the second worksheet sent to the clients for a Chapter 7 evaluation was similar to that used for a Chapter 13 evaluation when the two worksheets ask for identical information, the only exception being that the Chapter 7 worksheet includes some questions similar to those from an official bankruptcy form. (Trustee's Exhibits 2 and 3).

■ The record clearly supports the bankruptcy court's statement that Mr. Dunn testified that Bill Parker secretaries usually filled out bankruptcy petitions without the assistance of an attorney. (Transcript, pp. 122–23). The transcripts also prove, contrary to Bill Parker's claims, that none of the debtors were ever asked to submit tax returns, bills and financial records (Transcript, pp. 12–13, 86), leading to the inescapable conclusion that such records could never have been reviewed. Bill Parker notes that Exhibit B to the Chapter 7 petition was filed by amendment. While the Trustee acknowledges that this is correct, the bankruptcy court committed no error by citing the firm's failure to file the exhibit with the petition as a further example of its not meeting the standards of bankruptcy law. This deficiency clearly shows a lack of care in preparing the original petition, a fault which a later filing cannot correct. *See, In re Chicago Midwest Donut, Inc.*, 82 B.R. 943, 948 (Bankr. N.D.Ill.1988). The record unequivocally shows that the Debtors in both cases had cash on hand when they filed their petitions, so that Bill Parker showed a lack of care in leaving the question concerning such funds empty on the bankruptcy petitions. (Transcript, pp. 15–16, 22, 101–02).

Bill Parker also contests some findings of fact unique to the case of Ms. Rainwater, but fails to show any reason for this court to overturn the bankruptcy court's holdings in that case. First, the firm contends that there is nothing in the transcript to show that Ms. Martin never reviewed the Debtor's financial records. This is essentially the same argument made as to the Debtor's tax returns and, as noted above, the transcript plainly shows that nobody asked the Debtor for these documents. Bill Parker also claims that there was no fault on its part because the fees paid to it were listed at one point on the petition even though not at others. While the Trustee admits that he was able to locate this information, that does not change the fact that required information was omitted from the petition. The bankruptcy court's findings are adequately supported.

Lastly, Bill Parker lists what it claims are a series of clearly erroneous findings of fact contained in the bankruptcy court's conclusions of law. None of them have any merit. Bill Parker disputes the finding that only minimum contact occurred between it and the clients, pointing to the three or four telephone calls of fifteen minutes each, the "intense" questionnaire communications and the § 341 meeting with creditors as examples of adequate contacts with its clients. Judge Hershner made no error in characterizing this level of contact as minimal. If Bill Parker seriously believes that this level of contact with its clients is sufficient, then one can only wonder what level an attorney with that firm would consider minimal.

The firm also claims that it was error for the bankruptcy court to state that Bill Parker contended that interviewing clients is not necessary to practice bankruptcy law. While one of the firm's attorneys may never have declared this openly, such a statement is clearly valid as a summation of the substance of Bill Parker's case. If Bill Parker thought otherwise then it would have recognized, but not admitted, that its method of practicing law is flawed. It was also not error for the bankruptcy court to state that Bill Parker contended that its questionnaire replaced the traditional interview with its clients. Again, this statement is a fair summation of the firm's case, and in fact the record directly supports such a conclusion since Mr. Dunn stated that the questions performed the "same thing" as an interview with an attorney. (Transcript, p. 77).

Bill Parker also rehashes its claim that the bankruptcy court wrongly concentrated on its typographical errors and the Debtors

lay testimony as evidence of the substandard practice of law while ignoring the fact that the Debtors obtained the results they sought. This court will therefore rehash its previous statement that this argument is completely incorrect. The ends do not justify the means. The Debtors in both cases obtained their relief due to the bankruptcy system and in spite of the misinformation supplied by Bill Parker.

Finally, in the case of Ms. Rainwater, Bill Parker argues that the bankruptcy court erroneously concluded that the Debtor had been inadequately counselled because she was not able to legally define certain aspects of her testimony. This court is at a loss to understand this claim. By making such a statement Bill Parker could only be claiming that the Debtor was adequately counselled, yet the record clearly shows that counselling and interviewing clients is simply not a part of Bill Parker's method of practicing law. There is no merit in this objection to the bankruptcy court's ruling.

In each case Bill Parker has filed a reply brief. The court will not consider these pleadings, however, because they were filed after the ten day period for filing after service of the Trustee's brief as allowed by Bankruptcy Rule 8009(a)(3). Also, they are unresponsive in that they raise new issues not mentioned in Parker's original brief or the Trustee's brief. The Trustee's motions to strike are granted.

In its Statement of Issues and Statement of Facts, Bill Parker raises the question of whether due process was afforded when sanctions under Rule 9011 were issued against the law firm rather than the individual signing attorney. Although Bill Parker failed to argue or discuss this issue in the remainder of its briefs, the court is compelled to consider it in light of *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), which was decided after the bankruptcy court's orders were issued. In that case, sanctions were assessed against a law firm for plead-

ings which had been signed by a partner before and after he joined the firm. The Supreme Court reversed, saying that sanctions under Rule 11 could be imposed only against the attorney who actually signed the pleadings, and not the firm as a whole. 110 S.Ct. at 458–59.[2]

Given the conduct of Bill Parker, this court is not willing to allow *Pavelic* to overrule the sanctions imposed by the bankruptcy court. In that case the attorney who signed the pleadings had actually managed the case, while here the signing attorney did not receive the Debtors' papers until the process of preparing to file for bankruptcy was well underway, an entirely different factual situation. To literally follow the rule in *Pavelic* in these cases would lead to the anomalous result of modifying the bankruptcy court's orders so that sanctions would be imposed only against Anne Martin, the associate who actually signed the filings. Such a result would be inherently unfair and unjust, since Robert Dunn, a more senior attorney, reviewed the materials submitted by the debtors and directed them to submit further information. This court feels strongly that he too should bear the burden of the lack of professionalism shown in these cases. Moreover, a strict interpretation of *Pavelic* would create the absurd precedent of allowing a partner in a law firm to prepare pleadings in an unacceptable manner and then summon an associate to sign them, thus making only the junior lawyer liable for sanctions. Such a ruling would only invite abuse by unscrupulous attorneys. The Supreme Court could not possibly have intended to encourage or allow such conduct.

Based on the fact that Bill Parker is not engaged in a typical manner of practicing law (or so this court hopes), the differences between the facts in these cases and *Pavelic*, the unjust results of strictly applying that case and the possibility of a loophole in its future application, this court is willing to venture to create an

---

**2.** This court believes that a precedent concerning Rule 11 is equally applicable to a case involving Bankruptcy Rule 9011, since they are practically identical and serve the same purpose.

exception to the Supreme Court's ruling, but one that is consistent with that precedent. When a senior attorney in a law firm engages in an unacceptable method of practicing law while reviewing and managing a case, he should be liable for sanctions together with the junior attorney who actually signs the pleadings, even though the senior attorney does not sign them himself. Accordingly, this court affirms the bankruptcy court's orders but modifies them to provide that the sanctions imposed shall be borne by Anne Martin and Robert Dunn jointly and severally. Although Bill Parker cannot be forced to do so, the court feels that in the interests of fairness the firm should be willing to pay these sanctions for its attorneys, since the record hints that they were engaged in practices which were normal for that firm.

Based on this result, this appeal cannot be considered frivolous. Accordingly, the Trustee's motion for attorneys' fees is denied. Nonetheless, this court wishes to make clear that but for *Pavelic* it would have been only too willing to grant the Trustee's motion. Bill Parker's enumerations of error are meritless and often flatly contradicted by the record. The firm has disregarded both the record and the law and its lack of care is evident in both the style and substance of its appellate briefs. There has been without doubt a total absence of professionalism in this matter and possibly some serious ethical lapses as well. A copy of this order will be forwarded to the General Counsel of the State Bar of Georgia for possible consideration by the Disciplinary Committee.[3]

### III. CONCLUSION

Accordingly, after due consideration of the law and the facts, the decisions of the bankruptcy court in cases CA–89–42–ATH(DF) and CA–89–43–ATH(DF) are AFFIRMED but MODIFIED to provide that attorneys Anne Martin and Robert Dunn shall be jointly and severally liable for the sanctions imposed by the bankruptcy court instead of the Bill Parker Firm. The Trustee's motions to strike are GRANTED, but his motion for attorneys' fees is DENIED.

SO ORDERED.

---

3. The court wishes to note that this is not the only time Bill Parker has been reprimanded for its method of practicing law. In *Matter of Dalton*, 95 B.R. 857 (Bankr.M.D.Ga.1989), Judge Hershner also decided that the firm was not entitled to attorney's fees for the same reason the firm was censured in the present cases: the attorneys' failure to meet with the debtors resulted in the filing of false information. Furthermore, Bill Parker's insistence on a retainer prior to the filing of the bankruptcy petition, even though the Bankruptcy Code provided a means for paying attorneys' fees, caused the debtors to be without the protection of the Code for a period of several months during which some of their property was taken by creditors. 95 B.R. at 859–60.

The bankruptcy court held several hearings on the same date, each one concerned with applications for attorney's fees filed by Bill Parker. *Dalton*, 95 B.R. at 858 fn. 1. *Dalton* was later affirmed by the undersigned judge. *Bill Parker & Associates v. Hope (In re Dalton)*, 101 B.R. 820 (M.D.Ga.1989). For the sake of the legal profession, this court is embarrassed, but somehow not surprised, to find that the present cases do not represent the only instances of Bill Parker's failing to meet acceptable minimum standards of bankruptcy practice.