946 F.2d 82
 Bankr. L. Rep. P 74,272
In re DAKOTA RAIL, INC.
McLeod County Regional Rail Authority.
Jerome ROSS, Appellant,
v.
DAKOTA RAIL, INC.; Thomas G. Lovett, Jr., Trustee; and
Kimberly Hughes and Elli Mills, Appellees.
 No. 90-5583.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1991.
Decided Oct. 3, 1991.
Rehearing and Rehearing En Banc
Denied Nov. 21, 1991.
 
 Richard Nadler, argued (Michael Hoverson, on brief), St. Paul, Minn., for appellant.
 Mark Kalla, argued (John C. Thomas, on brief), Minneapolis, Minn., for appellees.
 Before LAY, Chief Judge, RONEY,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Jerome Ross appeals from the district court's[1] order affirming the bankruptcy court's[2] order confirming the Chapter 11 reorganization plan submitted by Kimberly Hughes and Elli Mills. We affirm.
 
 I.
 
 2
 Jerome Ross is the sole shareholder and President of Dakota Rail. Dakota Rail operated a forty-four mile long short-line railroad extending from Wayzata to Hutchinson, Minnesota. The railroad operations were not profitable, however, and Dakota Rail filed for protection from creditors under Chapter 11 of the Bankruptcy Act. Thomas Lovett was appointed trustee.
 
 
 3
 Dakota Rail continued to operate daily service between Wayzata and Hutchinson while in reorganization. Although shipper satisfaction remained high, Dakota Rail continued to lose money.
 
 
 4
 Ross submitted several disclosure statements and reorganization plans to the bankruptcy court, none of which was approved. During this time, Hughes, the owner of a company that does consulting for railroads, contracted with Ross to find potential buyers for Dakota Rail. She was not successful in her efforts. Hughes then joined with Mills, the owner of a management consulting firm, and inquired about the possibility of purchasing Dakota Rail themselves. After discussion with Lovett about purchasing the Dakota Rail, it was decided that Mills and Hughes would submit a disclosure statement and reorganization plan to the bankruptcy court so that all creditors would have an opportunity to vote on the proposal. On November 20, 1989, the bankruptcy court denied approval of Mills and Hughes' first disclosure statement and plan because neither Mills nor Hughes was a party in interest under the Act. On November 22, 1989, Lovett joined as a co-proponent of the Mills/Hughes plan.
 
 
 5
 The McLeod County Regional Railroad Authority (RRA), a public entity formed to aid the regional railroad, filed a competing plan. A hearing was held on December 27 and 28, 1989, and on January 5, 1990, during which numerous witnesses testified in support of the competing plans. On January 18, 1990, Lovett sent the bankruptcy court a letter in which he stated that upon further reflection he had concluded that his support of the Mills/Hughes plan was prematurely voiced, that he was withdrawing that support, and that he was taking a neutral position with respect to each of the competing plans.
 
 
 6
 On February 26, 1990, the bankruptcy court entered an order, supported by a sixty-three page memorandum opinion, confirming the Mills/Hughes plan. The bankruptcy court's order was appealed by Ross and the RRA. Prior to the submission of its brief to the district court, however, the RRA withdrew from the case.
 
 
 7
 Ross argues on appeal that Mills and Hughes are not parties in interest; that the bankruptcy court improperly valued Dakota Rail and its assets; that the bankruptcy court's decision to reject the RRA plan violated the Tenth Amendment; that the bankruptcy court abused its discretion by not conducting an independent appraisal of Dakota Rail and its assets; that the Mills/Hughes plan was not in the best interests of the public; and that the bankruptcy court erred factually and legally in determining the liquidation value of the railroad.
 
 II.
 
 8
 The bankruptcy court's factual findings will not be overturned unless clearly erroneous. Its conclusions of law are reviewed de novo. Bankr.R. 8013; Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987). Furthermore, as the second reviewing court, we review de novo the district court's factual and legal conclusions and conduct an independent review of the bankruptcy court's judgment. Id. at 1320.
 
 III.
 
 9
 Ross first argues that Mills and Hughes are not parties in interest within the definition of 11 U.S.C. § 1121(c) (1979), which provides that "[a]ny party in interest, including the debtor, [and] the trustee ... may file a plan." Ross contends that to file a plan, the party must have a pecuniary interest in the proceeding. Kapp v. Naturelle, Inc., 611 F.2d 703, 706 (8th Cir.1979) (interpreting section 57(d) of the Bankruptcy Act). Thus, he argues that because Mills and Hughes lacked such a pecuniary interest, they were not authorized to submit their plan and the bankruptcy court therefore lacked jurisdiction to accept it.
 
 
 10
 The statutory language is unequivocal: A trustee may file a plan. Thus, once Lovett joined the Mills/Hughes plan, the statutory requirement was satisfied. Ross argues that once Lovett withdrew his support for the Mills/Hughes plan, that plan was no longer confirmable for want of a party-in-interest proponent. We find, however, that Lovett's purported withdrawal was equivocal at best in view of his asserted position of neutrality with respect to the competing plans. Moreover, this attempted withdrawal came too late. Only some twenty days earlier, during the December 28, 1989, portion of the confirmation hearing, Lovett, in response to a direct question from the bankruptcy court, stated that he remained a co-proponent of the Mills/Hughes plan. Finally, we note that Ross did not assert this argument on appeal to the district court.[3]
 
 
 11
 Second, Ross claims that the bankruptcy court erred in determining the liquidation value of Dakota Rail and its assets. We disagree.
 
 
 12
 The statutory provision at issue is section 1173(a)(2), which requires that:
 
 
 13
 [E]ach creditor or equity holder will receive or retain under the plan property of a value ... that is not less than the value of property that each such creditor or equity holder would so receive or retain if all of the operating railroad lines of the debtor were sold, and the proceeds of such sale, and the other property of the estate, were distributed under chapter 7 of this title on such date.
 
 
 14
 11 U.S.C. § 1173(a)(2). The legislative history to this section explains that "the test focuses on the value of the railroad as a going concern. That is, the test is based on what the assets, sold as operating rail lines, would bring." H.R.Rep. No. 595, 95th Cong., 1st Sess. 425 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6381.
 
 
 15
 The record clearly reflects, and the bankruptcy court found, that Dakota Rail was undercapitalized and had a history of operating losses. It consistently lost money despite favorable arrangements with its creditors and virtually no debt service. It was therefore entirely reasonable for the bankruptcy court to conclude that the trustee was not likely to receive an offer better than that proposed by the Mills/Hughes plan. Indeed, neither Ross nor the RRA presented any evidence as to the likelihood of receiving any additional bids from potential purchasers. The bankruptcy court correctly concluded that as a going concern, Dakota Rail's value was the amount provided in the liquidation plan of its sole potential purchasers, Mills/Hughes.
 
 
 16
 We note that section 1173(a)(2) requires that a confirmable plan provide greater value than the liquidation value of the line. We find ample evidence in the record to support the bankruptcy court's conclusion that this requirement was met.
 
 
 17
 Third, Ross argues that the bankruptcy court violated the Tenth Amendment when it chose the Mills/Hughes over the plan proffered by the RRA. This argument merits little discussion.
 
 
 18
 The bankruptcy court found that the RRA was not a bona fide purchaser, because it was willing to assume financial responsibility for Dakota Rail at a financial loss to itself. The bankruptcy court found that the RRA's plan was generally flawed, unrealistic, and could not legally be confirmed. Thus, the decision to reject the RRA plan was not based on RRA's status as a public entity.
 
 
 19
 Fourth, Ross argues that the bankruptcy court should have ordered an appraisal. Ross does not, however, bring to our attention any evidence that such an appraisal is required by law. We agree with the district court that the "Bankruptcy Court itself is the finder of fact; the law does not pass the responsibility on to independent appraisers." In re Dakota Rail, Inc., No. 90-205 (D.Minn. October 31, 1990) (order affirming bankruptcy court decision).
 
 
 20
 Fifth, Ross argues that the Mills/Hughes plan was not in the best interest of the public as required by section 1173(a)(4). The record reflects, however, that the Mills/Hughes plan had the shippers' support, that its management was more qualified, that the ailing railroad would be taken off the public dole, and that the Mills/Hughes business plan had a greater chance for success. Thus, the bankruptcy court's finding that the Mills/Hughes plan was in the public interest is not clearly erroneous.
 
 
 21
 Finally, Ross argues that the bankruptcy court erred legally and factually in determining the liquidation value of the railroad. He contends that since Dakota Rail is an ongoing business, the proper standard was not applied. We reject this argument for reasons noted above.
 
 
 22
 Ross also points to factual errors made by the bankruptcy court. We find no clear error in the extensive findings of fact made by the bankruptcy court. We also note that the bankruptcy court's decision rested substantially on its assessment of the credibility of the myriad witnesses who testified as to the appropriate value of Dakota Rail's assets. The bankruptcy court found the Mills/Hughes witnesses credible and persuasive and the RRA's witnesses something less. We will not disturb this finding.
 
 
 23
 This opinion is a very abbreviated summary of the factual and procedural history of this protracted proceeding. We conclude, however, that no useful purpose would be served by analyzing the testimony of the numerous witnesses who testified at the confirmation hearing. The bankruptcy court painstakingly performed that task in its comprehensive, thorough memorandum opinion. Suffice it to say that we have no reason to disagree with the findings and conclusions contained therein.
 
 
 24
 The district court's order is affirmed.
 
 
 
 *
 The HONORABLE PAUL H. RONEY, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [2]
 The Honorable Nancy C. Dreher, United Stated Bankruptcy Judge for the District of Minnesota
 
 
 [3]
 The RRA had included this argument in its brief to the district court. As we noted above, however, the RRA withdrew from the appeal before a judgment was issued by the district court