# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3395

_____

In re:  Clara Clark; Michael Karsch;     *
Lena Falls; Mary Carr; Hattie M.     *
McClinton; Leon J. Herron,     *
   *
        Debtors.     *
_____     *    Appeal from the United States
   *    District Court for the
Elbert A. Walton,     *    Eastern District of Missouri.
   *
        Appellant,     *
   *
      v.     *
   *
John V. LaBarge, Jr.,     *
   *
        Trustee/Appellee.     *

_____

Submitted:  April 14, 2000

Filed:    August 21, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and FRANK,[1] District
     Judge.

_____

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District
of Minnesota, sitting by designation.

WOLLMAN, Chief Judge.

Elbert A. Walton, Jr. appeals from the district court's[2] order affirming the bankruptcy court's[3] opinion that denied Walton attorney fees, required him to disgorge fees he had previously received, and ordered him to pay costs to the United States Trustee[4] who investigated his conduct in six Chapter 13 bankruptcy cases. We affirm.

**I.**

The facts below are from the bankruptcy court's December 21, 1998, amended memorandum opinion (Bankruptcy Opinion). Generally, debtors represented by attorney Walton became his clients after meeting with his paralegal, MacArthur Jackson, who worked from the same office space both as an employee of Walton's practice, Metropolitan St. Louis Legal Services Corporation, P.C., and as an independent financial consultant. The debtors, considering Jackson to be Walton's "right hand person," paid approximately $350 to Jackson for services and filing fees related to their Chapter 13 cases, which included advice and the preparation of necessary filings such as the bankruptcy petition and Chapter 13 plan. Jackson would then explain that although he was preparing the documents, in court they would need to be represented by a lawyer. He then would refer them to Walton or simply indicate

---

[2]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

[3]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[4]The United States Trustee in a Chapter 13 case performs various administrative, advisory, and enforcement functions, and shall appear and be heard at certain bankruptcy hearings. See 11 U.S.C. § 1302(b) (1993 & Supp. 2000).

that Walton would represent them. In most of these cases, the debtors first met Walton in court. Walton is "one of the more frequent bankruptcy petition filers" in the district.

Local rules and practice in the bankruptcy courts of the Eastern District of Missouri provide that a Chapter 13 debtor's attorney may choose to receive compensation through one of two methods. The method at issue here is the election of a flat fee of $1250.00, which Walton requested for his representation in the six cases underlying this appeal. During the debtors' July 1998 plan confirmation hearings, the bankruptcy court took up the matter of inconsistencies in reported payments of attorney fees and incorrect or incomplete fee disclosures, which were the basis for the Trustee's objections to the plans' confirmation. Walton had filed multiple documents in an attempt to overcome the Trustee's objections, but the court, evidently not reassured by Walton's actions, scheduled further hearings.

At least nine persons were subpoenaed for the subsequent hearings held on September 8, October 2, and October 21 of 1998: Walton, Jackson, a former associate of Walton, and the six debtors. Four of the debtors, Walton, and Jackson appeared, and Walton cross-examined at least one of his clients about payments made to Jackson. On October 13, 1998, the Trustee submitted to the bankruptcy court and served on Walton documents entitled "Summary of Trustee's Position" concerning the five cases that were heard on September 8 and October 2. (The hearing in debtor Leon Herron's case was scheduled for October 21, 1998.) These documents summarized inaccuracies in the filed documents and testimony that was given at the September 8 and October 2 hearings and at earlier bankruptcy proceedings, and concluded with a request that Walton be denied attorney fees and that the Trustee be awarded costs and expenses as a sanction. Walton did not respond to these documents or submit any of his own. He attended the October 21 hearing in debtor Herron's case.

The Bankruptcy Opinion gives the following overview of the September/October hearings: "At trial, Mr. Walton, Mr. Jackson and four of the six debtors appeared having an opportunity to support or respond to the Trustee's allegations. . . . When confronted with the multiplicity of inconsistencies in the documents filed in these cases, Mr. Walton frequently deferred responsibility to the former associate . . . ." Bankruptcy Opinion at 4, 5. The bankruptcy court also rendered findings of fact specific to each debtor's case, reciting a litany of problems that included: inconsistencies in Walton's filings about payments and in response to the Trustee's objections; execution of blank forms; unauthorized or forged signatures of both Walton and debtors; and Walton's ignorance of the cases for which he was responsible. The court concluded that Walton had failed to properly represent the debtors or perform the legal services contemplated by the fee, and that he had done so in bad faith. The court ordered that attorney fees Walton sought in these cases be denied, that fees already paid be disgorged, and that costs and expenses be awarded to the Trustee as a sanction against Walton. The court then referred the six cases to the district court for disciplinary investigation.

Walton appeals from the decisions of the courts below, arguing that the bankruptcy court's factual findings are clearly erroneous, that the court erroneously applied the law regarding fees and sanctions, and that he did not receive adequate notice and a hearing about the possibility of such a fee denial and sanctions.

## II.

As the second reviewing court, we apply the same standards of review that the district court applied. See Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 754 (8th Cir. 1997). We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo, see Ross v. Dakota Rail, Inc. (In re Dakota Rail, Inc.), 946 F.2d 82, 84 (8th Cir. 1991), and a decision regarding attorney fees for an abuse of

discretion, see Grunewalt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.), 7 F.3d 740, 744 (8th Cir. 1993).

## A. Factual Findings

We briefly address Walton's primary arguments of factual error. First, Walton alleges that the court erred by failing to find that he was the victim of an errant employee, but he provides no evidence, much less clear evidence, to contradict the court's finding that Walton was well aware that Jackson provided legal bankruptcy assistance and collected payments. Walton admitted that Jackson functioned at least partially as an employee when he provided bankruptcy services to these debtors, and Walton himself filed pleadings with the bankruptcy court acknowledging receipt of some of the payments Jackson had collected.

Second, Walton contends that the hearings concerned only the amount that remained due for legal fees, not the propriety of attorney fees in general, and thus he had no notice that fees could be fully denied. We note that Walton has provided us with no transcript or other record of the September/October hearings that might support his contention that fee disgorgement was not discussed. To the contrary, the bankruptcy court's opinion makes repeated references to the testimony offered during these hearings, which included testimony about the documents previously filed with the court. The hearings, set by the court to disentangle the problems with attorney fees, resulted in the production of wide array of evidence, including testimony from the four debtors and from Jackson and Walton concerning the office's operations, services performed and by whom, and signatures on the various filed documents. Thus, the matters in issue at the hearings involved more than simply a discussion of the amounts of money that had been received by Walton or Jackson for bankruptcy services. The bankruptcy court noted in its opinion that Walton attempted to shift the blame for the

inaccuracies and fee collection practices, which indicates Walton was given ample opportunity to be heard.

Third, Walton argues that because what constitutes "local practice" is nebulous and undefined, he may not be denied fees for violating it. We disagree. The explanation of services that Walton signed and filed in each case disclosing the fees paid and listing the services to be rendered is in large part patterned on the court's local practice standards. Walton does not dispute that he failed to perform many of the listed services, such as advising his clients. Additionally, when Walton applied for the flat fee under the court's local practice, he implicitly agreed to provide the services the court required. Moreover, the court did not rest its conclusion solely on violations of local practice.

## B. Fee Award and Disgorgement

Walton contends that the because the debtors' bankruptcy plans were confirmed, he should receive a fee without inquiry into its reasonableness.

We find neither an abuse of discretion nor an improper application of legal standards or procedure in the court's denial of fees and its order requiring disgorgement of those fees already paid. The bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness. See 11 U.S.C. §§ 329, 330 (1993 & Supp. 2000); Bankr. Rule 2017, 11 U.S.C. (1984 & Supp. 2000); Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997) ("Whether the compensation sought is reasonable, given the time, nature, extent of the services and the value of the services is always a question of fact for the court.") (internal quotation marks and citation omitted). The burden is on the attorney to prove that the agreed compensation is reasonable. See In re Mahendra, 131 F.3d at 757. As the Fifth Circuit has stated, "[i]t is well established law that, absent compliance with

the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation." Anderson v. Anderson (In re Anderson), 936 F.2d 199, 204 (5th Cir. 1991).

The bankruptcy court found that by seeking the flat fee for services Walton knew had been performed by his non-attorney employee, Walton was attempting to collect excessive payments, with the effect of over-charging the debtors as well as violating bankruptcy rules, such as Bankruptcy Rule 9011,[5] which is analogous to Federal Rule of Civil Procedure 11, see In re Coones Ranch, Inc., 7 F.3d at 743, and Rule 2016, requiring fee disclosure. Walton admits that he did not meet with debtors until their meetings with creditors and that, although he officially represented the debtors, a non-attorney prepared, signed, and filed documents and advised the debtors when they sought bankruptcy assistance. These actions, at a minimum, violate Rules 9011 and 2016. The work performed by Walton had little or nothing to do with the confirmation of the plans. See, e.g., Parker & Assocs. v. Flatau (In re Rainwater), 124 B.R. 133, 140 (M.D. Ga. 1991) ("The Debtors in both cases obtained their relief due to the bankruptcy system and in spite of the misinformation supplied by [the attorney].").

---

[5]
> (a) . . . Every petition, pleading, written motion, and other paper . . . shall be signed by at least one attorney . . . .
> (b) . . . By presenting to the court . . . a petition, pleading . . . or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry . . . –
>   (3) the allegations and other factual contentions have evidentiary support . . .
> (c) Sanctions. If, after notice and a reasonable opportunity to respond . . . the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction. . . .

Bankr. Rule 9011, 11 U.S.C. (Supp. 2000).

Accordingly, we conclude that the decision to deny the award of fees and requiring the disgorgement of fees was not an abuse of the court's broad discretion.

## B. Sanctions

Walton also contends that the court erred in awarding a sanction against him in the amount of $4,759.00, which represented the Trustee's reasonable attorney fees and expenses. The court found that Walton and Jackson had "misused the bankruptcy process for their own benefit and personal gain," and Walton has not presented evidence to convince us that this finding is clearly erroneous. Walton argues, however, that the court misapplied the law and failed to give him adequate notice and an opportunity to be heard.

The bankruptcy court awarded sanctions against Walton by exercising its authority under section 105(a) of the Bankruptcy Code, under 28 U.S.C. § 1927, implicitly pursuant to Rule 9011, and by its inherent authority. Although we have questioned whether a bankruptcy court has the power to award sanctions under section 1927, see Brown v. Mitchell (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1221 (8th Cir. 1987), we conclude that the court had ample alternative authority to sanction Walton. Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel. See In re Volpert, 110 F.3d 494, 500 (7th Cir. 1997); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996). This provision has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process. See Jones v. Bank of Sante Fe (In re Courtesy Inns Ltd., Inc.), 40 F.3d 1084, 1089 (10th Cir. 1994). Finally, a "bankruptcy court has jurisdiction under Bankruptcy Rule 9011 to assess attorney's fees as sanctions against attorneys who fail to comply with the rule." In re Arkansas Communities, 827 F.2d at 1222.

An individual must receive notice and an opportunity to be heard before sanctions may be imposed. See Chambers v. NASCO, Inc., 501 U.S. 32, 56-57 (1991); Jensen v. Federal Land Bank of Omaha, 882 F.2d 340, 341 (8th Cir. 1989). Rule 9011 provides for notice and a hearing before the imposition of a sanction for its violation. "[A]fter notice and a hearing," as used in the Bankruptcy Code, is defined as "after such notice . . . and such opportunity for a hearing as is appropriate in the particular circumstances. . . ." 11 U.S.C. § 102(1)(A); In re Kula, 213 B.R. at 742-43. The court may act without a hearing if it has provided an opportunity for one but no parties in interest request it. See 11 U.S.C. § 102(1)(B). The knowledge that violations of particular bankruptcy rules are at issue, however, is not sufficient notice that sanctions are being considered, see Jensen, 882 F.2d at 341; rather, notice must be given that the court is considering imposing sanctions.

At the September/October hearings, Walton was prepared to discuss his organization's business structure; his and Jackson's performance of legal services; and the question of attorney fees, including the matter of incomplete and inaccurate filings. He admitted that some of the signatures of various pleadings were not his own and that he had signed others without performing services. Given these topics of discussion, we find it difficult to conclude that Walton had no notice of possible sanctions for his unethical conduct and rule violations. We need not rest our decision on this ground, however, because Walton received adequate notice, even assuming that he had not known until the hearings that sanctions were being considered.

In In re Mahendra, an attorney was informed at a hearing that the Trustee was considering asking for sanctions, and a week later the Trustee filed a motion for sanctions. See In re Mahendra, 131 F.3d at 758. The attorney was not given a hearing but had admitted the facts underlying the motion and did not respond to the Trustee's motion, although he later filed a general summary judgment motion. See id. at 758, 754. We concluded that because the attorney had had sufficient notice and opportunity

to respond, his due process rights were not violated.  See id. at 758; see also Silverman v Mutual Trust Life Ins. Co. (In re Big Rapids Mall Assocs.), 98 F.3d 926, 929 (6th Cir. 1996) ("A hearing is not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys.").

On October 13, 1998, the Trustee served on Walton and filed with the court the Trustee's summaries of position in the first five cases, requesting costs and expenses and the denial of attorney fees.  These documents assuredly put Walton on notice that sanctions were being requested.  The bankruptcy court noted that Walton did not respond to these summaries and requests in the two months between their filing and the issuance of the court's opinion.  Additionally, Walton attended debtor Leon Herron's hearing on October 21, 1998, which was after the Trustee had filed the request for fee denial and sanctions for the other five cases that were being considered with Herron's. Walton had the opportunity to defend himself during the hearing in Herron's case and to request from the bankruptcy court further time to respond, if necessary.

## III.

Walton's final argument, that the district court's referral for disciplinary investigation should have been confidential and sealed, rather than set forth in a public order, is without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.