**In re Mary Beth USERY, Debtor.**

**Gladys DAVIS, Plaintiff,**

v.

**Fred Charles MOON, Trustee, Defendant.**

**Bankruptcy Case No. 92–60255.
Adv. No. 93–6040.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 23, 1993.

James R. Fossard, Springfield, MO, for plaintiff.

John Lewis, Springfield, MO, for defendant.

## *ORDER AND MEMORANDUM OPINION*

KAREN M. SEE, Bankruptcy Judge.

Plaintiff Gladys Davis filed a motion to lift the automatic stay to require the trustee to turn over property she alleged belonged to her. The court holds the personal property does not belong to plaintiff, but is property of debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1), because plaintiff either gifted the property before bankruptcy or abandoned it. All parties agreed that this court may treat the motion as an adversary action and render a final judgment. *See* 28 U.S.C. § 157(c)(2).

### *I. FACTS*

Plaintiff is debtor's 82 year old mother. Debtor is currently about 35 years old. When debtor, plaintiff's only child, was seven years old plaintiff gave debtor full ownership in trust of all plaintiff's titled assets, primarily a multi-million dollar nursing home business, Central Health Care Centers, Inc. Debtor's legal title vested when she became 21. In 1979, when debtor was about 20 years old and newly married, plaintiff moved in with debtor and her husband and lived with them until 1988. Plaintiff brought with her many items of personal property including jewelry, Cybis

statues, other art and antiques, and various other items.

Previously, plaintiff had displayed the Cybis statutes in an étagère in her own residence. After plaintiff moved in with debtor, debtor permanently displayed the statuary in the étagère, and used and displayed the other items permanently in her homes. In one of debtor's homes, special display cases and shelves were built to permanently display the antiques and art. Other items, including antique dishes, were maintained for many years in debtor's home, and were commingled with debtor's property. Then the items, still commingled, were stored in 30 boxes in a U–Haul storage unit under debtor's exclusive control. The storage contract was in the name of Central Health Care, debtor's company. Debtor commingled her property with the disputed property at home and in the 30 boxes in storage for many years. An appraiser valued the disputed items in storage at $16,179.

Debtor kept the jewelry, appraised at $53,000, under her exclusive control and wore it. Most of the jewelry was kept in a safe deposit box under debtor's sole control for many years and up to the time the trustee took possession. Plaintiff did not have access to the safe deposit box and was not an authorized signatory. Debtor paid for all insurance, repairs, maintenance and the safe deposit box for the jewelry. Debtor had one large diamond ring of about three carats remounted so it would fit only her. Debtor exercised exclusive control over the jewelry for more than five years. In 1987 and 1988, debtor represented on financial statements issued to the Ozark Bank and other institutions that she was the sole owner of the jewelry, art and antiques.

In 1988, plaintiff moved out of debtor's main residence and into a separate house owned by debtor and her husband. Later, plaintiff lived in a duplex owned by debtor and another duplex on which debtor paid the rent. Plaintiff did not take any of the items to her new residences or ever display even one or two favorite pieces in her residences. Instead, she left them all with debtor in debtor's home and under debtor's exclusive control.

In 1992, debtor filed a Chapter 11 petition which was converted to Chapter 7 in February 1993. At that point the chapter 7 trustee came into possession of all the property of the estate.

## II. PROPERTY OF THE ESTATE AND BURDEN OF PROOF

 Plaintiff contends the trustee should turn the personal property over to her. "The burden of proof in a turnover proceeding is at all times on the receiver or trustee; he must at least establish a *prima facie* case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the receiver or trustee." *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir.1990).

 Debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541(a)(1) is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983) (citing H.R.Rep. No. 95–595, pp. 367 (1977); S.Rep. No. 95–989, p. 82 (1978), U.S.C.C.A.N. 1978, pp. 5787, 5868, 6323). Determining the extent of the bankruptcy estate necessitates a three-part query. *See* David G. Epstein et al., *Bankruptcy*, vol. 1, § 2–8, at 40 (1992). First, the court must decide whether the items are "property" under § 541(a)(1). This is a question of federal law. *Board of Trade of Chicago v. Johnson*, 264 U.S. 1, 10[1], 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924); *See also In re Drexel Burnham Lambert Group, Inc.*, 120 B.R. 724, 735[2] (Bankr.S.D.N.Y.1990). Next, the court should look to state law to ascertain debtor's interest in the property. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re FCX, Inc.*, 853 F.2d 1149, 1153[1] (4th Cir. 1988). Third, the court must find debtor had the interest in property at the time she filed the bankruptcy petition.

As to debtor's interest in the items, Missouri law provides that "[a]ny competent evidence may be introduced to establish the fact of ownership of personal property." *Missouri v. Curry*, 473 S.W.2d 747, 749[6] (Mo.1971). "The elements of a gift are 'a present intent to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee.'" *Schultz v. Schultz*, 637 S.W.2d 1, 6 (Mo.1982). The evidence is undisputed that debtor accepted delivery of the items many years ago, and specifically, around 1979 and the early 1980's, and at the latest in the late 1980's. Consequently, the trustee must make a prima facie case that plaintiff had a present intent to make a gift of the items to her daughter.

### III. TRUSTEE'S EVIDENCE OF GIFT

The trustee makes his case by relying on numerous facts indicating plaintiff's intent to make gifts of the property and her knowledge that debtor for many years, until the time of the bankruptcy case, treated the property as if it belonged to debtor.

The relationship between plaintiff and debtor was close. They have lived together most of debtor's life and since 1988, plaintiff has lived in duplexes owned or rented by debtor. Debtor is plaintiff's only child, leaving plaintiff with no other natural objects of her bounty. When plaintiff moved out of debtor's house, although she had a separate residence where she could have displayed and stored at least some items, she left all the property in the exclusive control of debtor, in debtor's house where it was used and displayed. Debtor had a three-carat diamond ring remounted to fit only her and when she was not wearing the jewelry it was kept in a safe deposit box to which only debtor had access. Debtor paid all expenses for insurance, safe deposit storage, maintenance and repair on the jewelry. In debtor's home, debtor commingled her own property with items from plaintiff and later commingled property in the 30 boxes which were eventually stored at debtor's home and then in a U–Haul storage unit under the name of debtor's company, to which storage plaintiff had no access.

Plaintiff previously transferred all of her titled property to debtor. Debtor told her mother that in return, she would care for her. This personal property has no title, so transfer cannot be ascertained by reference to documents, as with the other assets previously transferred. However, transfer of ownership to debtor would be consistent with plaintiff's past intent to transfer to her daughter all her property. Debtor indicated on financial statements issued to banks that she was the owner of the jewelry, antiques and art.

The trustee has established a prima facie case that plaintiff intended to give the items to debtor and that the gifts were completed many years before the bankruptcy petition was filed. Before the bankruptcy, the actions of both plaintiff and debtor were consistent over a period of many years in treating the jewelry, art and antiques as if the items belonged to debtor, even to the point of representing to third parties that debtor Mary Beth owned the property. Only when the bankruptcy case was filed and when it was converted to Chapter 7 did debtor and her mother attempt to treat the property as if it belonged to the mother. It is not necessary to determine the exact date on which any particular gift was made. It is sufficient to find that the gifts were made many years before the bankruptcy was filed.

### IV. PLAINTIFF'S EVIDENCE OF CONTINUING OWNERSHIP

The evidence offered by plaintiff is not sufficient to support a finding of ownership by plaintiff. Plaintiff testified that she continued to own the property, yet the facts and everyday treatment of the property, from 1979 to the present, as discussed above, are contrary to that testimony. Plaintiff testified that she was an avid collector, yet none of the items had been purchased in recent years. The most recent items were purchased more than five years before bankruptcy and placed, without exception, in debtor's possession and control.

Betty Shook, who had sold plaintiff various items over the years, testified that plaintiff was an avid collector and had referred to items as if they belonged to plaintiff. However, any such conversations occurred many years ago, closer to 1979 and not any time past the mid–1980's. The court concludes that any such conversations predated the times the items were gifted to debtor. Even if any such comments were made after the time the items appeared to be gifted to debtor, which the court does not find, such comments alone do not establish ownership; it was just as likely the comments were intended only to acknowledge plaintiff's pride and satisfaction in having originally acquired the items and not to indicate continuing ownership.[1] Moreover, as to credibility and motivation to testify favorably for plaintiff, it must be noted that Mrs. Shook said she was a close friend of plaintiff and that plaintiff had been a very good customer who bought many items.

Finally, plaintiff's own admission is significant. Plaintiff testified that "if Mary Beth wanted the property she would simply take the property." Such a statement indicates either abandonment by plaintiff or plaintiff's permission or acquiescence for her daughter to possess and own all the property in the daughter's possession and control through the years and up to the present time. Plaintiff's claim indicates an intent to remove the property only from the hands of the trustee, and not to deprive her daughter of the items now or at any earlier time since 1979.

In evaluating debtor's testimony, it appears that she would give testimony convenient to the situation, and that fact must be considered in judging her credibility. Before the bankruptcy, debtor represented to financial institutions that she was the owner of the jewelry, art and antiques. Now, however, it is more convenient to support her mother's version of the situation which, incidentally, would result in the likelihood that debtor would later receive the property back free of the claims of the bankruptcy trustee, either by gift or inheritance, since debtor is an only child and in the past, the mother has transferred all of her property, in multi-million dollar amounts, to debtor.

## V. FINDING OF GIFT

The trustee met his burden of proof that ownership of the items had been transferred in past years from plaintiff to her daughter as gifts. Since plaintiff gave no credible evidence in rebuttal, the court holds the property does not belong to plaintiff, but belonged to debtor at the commencement of her bankruptcy. Therefore, the items of personal property are property of the bankruptcy estate under § 541(a)(1). *Crevier v. Welfare & Pension Fund for Local 701*, 820 F.2d 1553, 1556–57 (9th Cir. 1987).

## VI. ALTERNATE FINDING OF ABANDONMENT

The trustee argues alternatively that if plaintiff did not give the items to debtor, that plaintiff has abandoned the items, in which case they became debtor's property. Under Missouri law, as stated in *Herron v. Whiteside*, 782 S.W.2d 414, 416 [4, 5, 6] (Mo.App.1989) (citations omitted):

Abandonment is the voluntary relinquishment of ownership so that the property ceases to be the property of any person and becomes the subject of appropriation by the first taker. Abandonment of property requires intent plus an act. A sufficient act is one that manifests a conscious purpose and intention of the owner of personal property neither to use nor to retake the property into his possession.

---

**1.** It is consistent with human nature and family dynamics for an older family member, who gives a gift of a personal "treasure" to another family member, to continue to refer to the item in a loose context of ownership, perhaps to maintain an emotional connection or to preserve the idea that the item is a family heirloom or keepsake. For example, Aunt Jane, who gave an antique chest to niece Susan 15 years ago, may go into Susan's home year after year and say, "There is my chest." Such reference may be a reminder that Aunt Jane had been generous or that she values the heirloom status of the chest. It does not necessarily mean that Aunt Jane maintains current ownership or is going to demand return of the chest.

■ In reviewing plaintiff's intent under *Herron* to neither use nor to retake the property, acts manifesting the intent to complete the abandonment include: plaintiff's acquiescence in debtor's permanent installation of the items on display in her home, even in custom-built display spaces for certain items; plaintiff's relocation to other homes without taking the property with her; her relinquishment of the property to the sole control of debtor, as in the items in the safe deposit box and the storage unit; and her knowledge that debtor paid all expenses for the jewelry and insured it as her own.

As to plaintiff's conscious purpose not to use or retake the property into her possession, it is significant that from 1979 to the present, the items have been in debtor's home, in debtor's use, or otherwise under debtor's exclusive control in safe deposit box storage. Even when plaintiff moved out of debtor's home in 1988, she failed to take even one of the items with her, which undercuts her testimony that these were treasured items still owned by plaintiff. Human nature is such that if a person owned treasured personal items such as figurines, antiques and art, and one was moving into a new residence, even one of modest size, one would take and display at least one or two of the allegedly treasured items to personalize the new home.

■ "The abandonment is complete at the moment the intention to abandon and the relinquishment of possession unite." *Id.* This moment was at least as early as 1988 when plaintiff moved out of debtor's home and left the items in debtor's possession and control. More likely, the moment or moments were even earlier, when plaintiff allowed debtor to permanently display and commingle items in her home, and to take control of the jewelry, pay for expenses and insurance, and remount the three-carat diamond ring for debtor's finger. The abandonment was long before 1992 when the bankruptcy case was filed, and February 1993, when the case was converted to Chapter 7.

## VII. CONCLUSION

The trustee has met his burden of proof to show that plaintiff gave the items of personal property to debtor many years before debtor filed her petition for bankruptcy. Plaintiff has not rebutted that showing with any credible evidence. Furthermore, the trustee has shown alternatively that plaintiff abandoned the items of personal property to debtor even if she did not expressly make a gift of them.

It is **ORDERED, ADJUDGED AND DECREED** as follows:

1. Prior to bankruptcy all non-titled personal property under the control of debtor Mary Beth Usery was owned by her, and is now property of the estate, free and clear of any claim of ownership by plaintiff.

2. Judgment is entered in favor of trustee Fred Charles Moon and against plaintiff Gladys Davis, with costs taxed against plaintiff, and the trustee shall not turn over to plaintiff the items of personal property, which are property of the estate, including but not limited to all property listed in paragraph 1 of Plaintiff's Motion to Lift Stay to Require Debtor or Trustee to Turn Over Property, and in Trustee's Exhibits 11 and 12, all Cybis statues and figures, Dali prints, and all other pieces of art, antiques, dishes, jewelry, and other items, including items stored in the 30 boxes.

