United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

Nos. 97-1221/2300
_____

In re: Bishweshwar Rai Mahendra,      *
                                      *
         Debtor,                      *
                                      *
------------------------------------------------  *
                                      *
Eric J. Snyder,                       *  Appeals from the United States
                                      *  District Court for the Eastern
         Creditor -- Appellant,       *  District of Missouri.
                                      *
    v.                                *
                                      *
A.  Thomas Dewoskin,                  *
                                      *
         Trustee -- Appellee.         *

_____

Submitted: September 10, 1997
     Filed:  December 17, 1997
_____

Before BEAM, FLOYD R. GIBSON, and HEANEY, Circuit Judges.
_____

FLOYD R. GIBSON, Circuit Judge.

These appeals arise from a District Court[1] Order entered November 26, 1996 which affirmed the Bankruptcy Court[2] Order dated May 6, 1996 that granted judgment in favor of Appellee A. Thomas Dewoskin ("Trustee") and against Appellant Eric J. Snyder. Snyder also appeals the District Court Order of March 3, 1997 which sanctioned Snyder for his frivolous appeal to the district court. For the reasons set forth below, we affirm these orders.

## I. BACKGROUND

On September 22, 1994, Bishweshwar Rai Mahendra ("Debtor") and Snyder executed a Representation Agreement (the "Agreement"). In pertinent part, the language of the Agreement provided:

1. WHEREAS, [Debtor] may not have filed income tax returns with either the IRS or the State of Missouri for the years, 1987, through and including 1993; and

2. WHEREAS, [Debtor] wishes to have [Snyder] represent him, but does not have the present cash with which to pay [Snyder]; and

3. WHEREAS, [Snyder] is willing to represent [Debtor] based upon [Debtor's] proposal to give him a Second Deed of Trust in the property.
. . .
                          * * *

17. [Snyder] agrees to represent [Debtor] regarding his income tax returns for the years 1987 through and including 1993 both before the

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

Internal Revenue Service and before the Missouri Department of Revenue.

Snyder's App. at 100, 103. Debtor also signed a Promissory Note (the "Note") in favor of Snyder for "[a]dvances up to $35,000." Id. at 105. This Note was for Snyder's "legal services" to be performed on behalf of Debtor. Id. Debtor further executed a Deed of Trust[3] that pledged his real property located in DeSoto, Missouri (the "property" or "real property") to Snyder as security for the Note.

On November 28, 1994, Debtor filed his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Snyder served as Debtor's attorney of record. Snyder did not file an application to be employed on behalf of the bankruptcy estate or an application for compensation. Regarding the fee arrangements between Snyder and Debtor with respect to the bankruptcy, Snyder stated that "[w]e considered [the bankruptcy] to be a continuation of the criminal representation [regarding the tax matters. The] method of paying . . . was [that] I was to be paid from the proceeds of the sale of his house." Snyder Dep. at 6. As of the date of the bankruptcy filing, Snyder was a pre-petition creditor of Debtor. Snyder recognized that he might have a conflict of interest with the bankruptcy estate. See id. at 12-13.

---

[3]The Deed of Trust provided in pertinent part:

[Debtor] has executed a Note to secure future advances for legal services and costs provided by [Snyder to Debtor]. Such parties have entered into a Representation Agreement whereby [Snyder] agrees to provide certain legal services and [Debtor] . . . has agreed to pay for such legal services by executing a Note for such legal services and costs and by securing the Note by this Deed of Trust. . . . This security instrument is governed by V.A.M.S. Section 433.055.

Id. at 109.

On April 28, 1995, Trustee closed the sale of Debtor's real property in DeSoto for the purchase price of $165,500. After priority claims were paid, Trustee deposited the sum of $17,171.64 into the bankruptcy estate's bank account. Snyder sought compensation from the sale proceeds of the real property for legal services in the amount of $13,484.68. Snyder maintained that he was entitled to compensation for his services rendered both pre-petition and post-petition.[4]

Trustee filed a Complaint to Determine the Validity, Priority, and Extent of the Lien on June 6, 1995; a Motion for Review of Attorney Fees on July 20, 1995; and a Motion for Imposition of Sanctions Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure on August 31, 1995. These motions named Snyder as the defendant in each matter. The parties "submitted"[5] these contested matters to the bankruptcy court pursuant to uncontested facts, Snyder's Motion for Summary Judgment, and legal briefs.

On May 6, 1996, the Bankruptcy Court entered an Order determining that: (1) to the extent Snyder's lien was valid, it did not cover representation beyond tax matters

---

[4]Snyder claims that Debtor and he modified the Agreement by orally agreeing that it extend to bankruptcy services. Snyder and Debtor memorialized this modification with a compensation statement, Amended Promissory Note, and Amended Deed of Trust. In addition, Snyder contends that the bankruptcy services were also independently covered within the scope of the original Agreement. See Snyder's Br., No. 97-1221, at 15.

[5]Snyder claims that neither party consented to "submission" of the case and that the parties never agreed to the facts. After reviewing this issue, we find Snyder's contention to be without merit. By submitting a motion for summary judgment, Snyder stated that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56; see also Fed R. Bankr. P. 7056. Therefore, by submitting his motion for summary judgment and stating that no genuine issue of material fact existed, Snyder agreed to submit the case.

set forth in the Agreement; (2) to the extent that Snyder's lien was valid, it was extinguished on the petition date with respect to any further future advances; (3) Snyder was not entitled to receive compensation from the assets of the estate for post-petition legal services; (4) legal services rendered for pre-petition tax and other non-bankruptcy matters would be awarded in the amount of $4,348.80; and (5) compensation for legal services rendered for pre-petition bankruptcy matters would be awarded in the amount of $1,000 but reduced by the same amount as sanctions for Snyder's conflict of interest.[6] The bankruptcy court entered this order without a hearing or trial. This order also did not award interest on the pre-petition lien nor any protection and collection costs.

On June 24, 1996, Snyder filed his Notice of Appeal to contest the Bankruptcy Court's Order. On November 25, 1996, the District Court entered its Judgment, affirming the Bankruptcy Court's Order in its entirety. Snyder filed his Notice of Appeal to this court on December 26, 1997.

On January 9, 1997, Trustee filed a Motion for Sanctions against Snyder pursuant to Fed. R. Bankr. P. 9011 for Snyder's alleged frivolous appeal to the district court. Snyder did not file a response. On March 3, 1997, the District Court entered an Order assessing sanctions against Snyder in favor of Trustee in the amount of $4,352.80. The district court denied Snyder's request to set aside this order on March 17, 1997. Accordingly, Snyder also appeals to this court arguing that the district court erred in assessing sanctions against him for filing an alleged frivolous appeal.

---

[6]The apparent conflict of interest arose from Snyder's assertion of a lien which would decrease the amount of back taxes Debtor paid to the Internal Revenue Service out of the estate. As a creditor of the bankruptcy estate, the larger the amount of attorney fees that Snyder would have received would leave less estate funds for distribution to the taxing authorities and a larger non-dischargeable debt claim for Debtor.

## II. DISCUSSION

In a case originating in bankruptcy court, the court of appeals functions as a second court of review and reviews the bankruptcy court's conclusions under the same standards that the district court applied. We review the bankruptcy court's findings of fact under the clearly erroneous standard and consider legal issues de novo. See Gourley v. Usery (*In re* Usery), 123 F.3d 1089, 1093 (8th Cir. 1997).

### A. The Unencumbered Portion of Debtor's Real Property Became Estate Property on the Petition Date.

Snyder argues that the bankruptcy court erred as a matter of law in finding that 11 U.S.C. § 542 (1994) extinguished his lien interest. Snyder also contests Trustee's position that 11 U.S.C. § 541 (1994) extinguished Snyder's lien interest. Snyder maintains that his right to be secured as to future advances and future obligations constitutes a present lien on Debtor's property. Snyder claims that, under Mo. Rev. Stat. § 443.055.2 (1994), his lien embodied the full extent of the face amount of the security instrument for future advances and obligations at the time the security instrument was created. Here, the Deed of Trust's face amount is $35,000 and was established on September 22, 1994. Therefore, Snyder concludes that this lien existed prior to the commencement of the bankruptcy filing--November 28, 1994--and that the bankruptcy estate takes its interest in the Debtor's real estate subject to Snyder's interest, regardless of how much Debtor owed Snyder on the petition date. We disagree.

Determining whether an interest is part of the bankruptcy estate requires a three-part query. First, the court must decide whether the item constitutes "property" under § 541(a)(1). See C.T. Dev. Corp. v. Barnes (*In re* Oxford Dev., Ltd.), 67 F.3d 683, 685 (8th Cir. 1995). Second, the court should look to state law to ascertain the debtor's interest in the property because "[p]roperty interests are created and defined by state

law . . . [u]nless some federal interest requires a different result." Id. (quotation and citation omitted). Third, the court must find that the debtor had the property interest at the time of filing the bankruptcy petition. See Davis v. Moon (*In re* Usery), 158 B.R. 470, 472 (Bankr. W.D. Mo. 1993).

Under § 541(a)(1), the bankruptcy estate consists of all of the debtor's legal and equitable property interests that existed as of the time that the bankruptcy petition is filed. See § 541(a)(1). The property of the bankruptcy estate is broadly defined by § 541(a)(1). See United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 (1983). "Any portion of a debtor's property that is unencumbered by mortgage--the equity--is part of the bankrupt's estate." United States v. Rauer, 963 F.2d 1332, 1337 (10th Cir.), cert. denied, 506 U.S. 886 (1992).

Pursuant to § 541, Debtor's legal and equitable interests in the real property became property of the estate as of the petition date. Thus, the estate possessed Debtor's unencumbered portion, or Debtor's equity, in the property. At that point, Debtor lost the right to authorize Snyder's legal services which could potentially further encumber this asset of the bankruptcy estate. Only the bankruptcy court could control the further encumbrance of the estate property. Neither Debtor nor Snyder sought or obtained the bankruptcy court's approval to continue to draw upon the future advance clause contained in the Agreement, Note, and Deed of Trust. To the extent that Debtor and Snyder have attempted to continue to draw upon the future advance clause after the petition's filing, such attempts constitute unauthorized post-petition transfers pursuant to 11 U.S.C. § 549 (1994). "[T]he trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized . . . by the court." 11 U.S.C. § 549; see also Brown v. Harris (*In re* Auxano, Inc.), 96 B.R. 957, 960 (Bankr. W.D. Mo. 1989) ("Taking a security interest in real estate is a 'transfer' as that term is defined in 11 U.S.C. Section 101(50).").

Turning to Missouri state law's determination of the extent of Debtor's interest in the property, Snyder misapprehends § 443.055's effect in the present case. Section 443.005.1(1) defines "borrower" to include a "successor in interest" to the "mortgagor, deed of trust grantor, or debtor." Section 443.055.6 allows the owner of the interest in the real property encumbered by the security instrument to give notice to the lender, electing to terminate the operation of the instrument as security for future advances made or incurred after the date the lender receives notice. We find that the filing of Debtor's bankruptcy petition, in the present case, comported with § 443.055.6's notice requirement to Snyder and effectively terminated the operation of the Note and Deed of Trust as security for future advances incurred after the date of filing the bankruptcy petition. Here, Snyder himself prepared and filed Debtor's bankruptcy petition and, thus, had actual notice of Debtor's relinquishment to the estate of his interest in the real property. Moreover, the Trustee, as the representative for the bankruptcy estate and successor in interest to the real property, did not authorize any further legal services to be performed by Snyder.

Such a result is analogous to the legal effect of a cash security retainer. Snyder's security agreement with a future advance clause, like a cash security retainer, was held by Snyder to secure payment of professional fees and costs yet to be rendered. Under the ethical rules applicable in most jurisdictions, the security retainer monies remain property of the client until counsel applies them to legal services actually performed. See Indian Motocycle Assocs. III Ltd. Partnership v. Massachusetts Hous. Fin. Agency, 66 F.3d 1246, 1255 (1st Cir. 1995). The debtor's equitable interest in the unearned portion of the retainer becomes property of the estate upon the filing of the bankruptcy petition. See id. To withdraw the retainer, counsel is required to file a fee application with the bankruptcy court pursuant to 11 U.S.C. § 330 (1994), and the court could require the debtor's counsel to surrender the unearned portion as "property of the estate" pursuant to § 542. See id.; see also Meeker v. Germeraad (In re Quincy Air Cargo, Inc.), 155 B.R. 193, 197 (Bankr. C.D. Ill. 1993) (security interest in property as a "security retainer" was estate property which can only be used by the professional

upon compliance with the entire fee application process, including court approval); *In re* Fitzsimmons Trucking Inc., 124 B.R. 556, 560 (Bankr. Minn. 1991) (an attorney's retainer held in trust is property of the bankruptcy estate).

In sum, at the time of filing the bankruptcy petition, Debtor still retained equity in the portion of the real estate unencumbered by Snyder's post-petition legal services. The filing of the petition transferred Debtor's equity in the real estate to the bankruptcy estate. Although we find that § 541, as opposed to § 542 (as the bankruptcy court found), is the more appropriate section for evaluating the relevant property interests, we affirm, under § 541's three-part query, the bankruptcy court's and district court's conclusions that the unencumbered portion of Debtor's real property became estate property on the petition date. See Cooksey v. Delo, 94 F.3d 1214, 1218 (8th Cir. 1996) (appellate court may affirm on any basis supported by the record).

### *B. Snyder Is Not Entitled to Receive Compensation From the Estate's Assets for His Post-Petition Legal Services.*

Snyder's contention that he is entitled to compensation for his post-petition legal services rests primarily on his belief that his lien interest was not extinguished by Debtor's filing of a bankruptcy petition because these legal services constituted future advances pursuant to § 443.055.[7] However, we reject this argument. As we explained supra in Section A of this Opinion, Snyder's lien--to the extent it was valid--was extinguished on the petition date with respect to any future advances. Snyder's only

---

[7]Snyder also argues, in the alternative, that the Agreement with Debtor constitutes an executory agreement because, if Snyder is not secured for his post-petition services, then Debtor has not fully performed the contract on Debtor's part. After carefully considering this issue, we find it to be without merit. Snyder further claims that Snyder and Debtor orally amended the Agreement to cover bankruptcy services. However, whether Snyder and Debtor orally amended the Agreement to cover bankruptcy matters is irrelevant because Snyder's lien was extinguished on the petition date and does not secure any post-petition legal services.

avenue for post-petition compensation would have been to seek such compensation pursuant to § 330 as an administrative expense. See *In re* Quincy Air Cargo, Inc., 155 B.R. at 197 (professional must comply with entire fee application process, including court approval, in order to be paid from estate property even when the professional has a lien on such property).

Here, Snyder did not seek permission to be employed by the estate, and no officer of the estate asked Snyder to perform services on behalf of the estate. In fact, Snyder would not have been eligible to be employed by the estate because he is not "disinterested" in accordance with 11 U.S.C. § 327 (1994). See Pierce v. Aetna Life Ins. Co. (*In re* Pierce), 809 F.2d 1356, 1363 (8th Cir. 1987) ("[U]nder Section 327(a), an attorney may be disqualified not only because he or she is not disinterested, but also because the attorney holds an 'interest adverse to the estate.' 11 U.S.C. § 327(a). . . . [A]n attorney's pre-petition mortgage on the debtor's real estate constitutes an 'adverse interest' under Section 327(a)."). Therefore, because denial of compensation is within the court's discretion, see id.; 11 U.S.C. § 328(c) (1994), and because we perceive no abuse of discretion, we affirm the bankruptcy court's and district court's decisions that Snyder is not entitled to compensation for services rendered post-petition.

### *C. The Bankruptcy Court Did Not Err in Awarding Snyder Compensation in the Amount of $4,348.80 for Pre-Petition Nonbankruptcy Legal Services.*

Snyder argues that the bankruptcy court erred by (1) only awarding him $4,348.80 for his pre-petition nonbankruptcy legal services; (2) not awarding him interest and protection/collection fees and costs under 11 U.S.C. § 506(b) (1994); and (3) not attaching his lien, to the extent it is valid, to Debtor's $8,000 homestead exemption in the real property. We disagree.

First, we find no reason to disturb the bankruptcy court's finding of fact that Snyder was entitled to $4,348.80 for pre-petition tax work. Snyder's time records

reflect this amount and support that the bankruptcy court did not clearly err in awarding this sum. We also affirm the bankruptcy court's conclusion that Snyder's lien in the real property was limited to the pre-petition tax services as the plain language of the Agreement so stipulated. See Snyder's App. at 103, ¶ ¶ 1-3, 17.

Second, we find that the bankruptcy court did not err in refusing to award Snyder interest and protection/collection costs on his pre-petition lien despite the Note and Deed of Trust's provision for such costs. The Bankruptcy Code provides that:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, . . . shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition. . . .

> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement. . . .

11 U.S.C. § 329 (1994). Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable. See In re Rheuban, 121 B.R. 368, 385 (Bankr. C.D. Calf. 1990). We conclude that § 329 authorized the bankruptcy court to award Snyder the fee it deemed appropriate for the pre-petition legal services performed in connection with Debtor's bankruptcy proceeding regardless of the existence of the Agreement, Note, and Deed of Trust and the provision for interest and protection/collection costs. Accordingly, because Snyder has failed to make the required showing, we find that allowing Snyder any further compensation would exceed the reasonable value of his services.

Third, we turn to the issue of Snyder's claimed interest in Debtor's homestead exemption. As of the petition date, the rights in Debtor's exemption were determined. See Armstrong v. Peterson (In re Peterson), 897 F.2d 935, 937 (8th Cir. 1990). Neither party disputes that Debtor was entitled to an $8,000 homestead exemption

pursuant to Mo. Rev. Stat. § 513.475 (1994). However, Snyder apparently contends that Debtor's homestead exemption is valid against all creditors except Snyder. We disagree. Pursuant to Fed. R. Bankr. P. 4003(b), the trustee and creditors have the right to object to the claimed exemptions within thirty days after the conclusion of the first creditors' meeting. Unless such an objection is filed, the property claimed as exempt by the debtor is exempt. See *In re* Stanley, 143 B.R. 900, 903 (Bankr. W.D. Mo. 1992). In the present case, the first meeting of creditors concluded on December 31, 1994; therefore, Snyder is time-barred from objecting to Debtor's homestead exemption as applied against Snyder.

### D. The Bankruptcy Court Did Not Err in Awarding Snyder $1000 for Pre-petition Bankruptcy Matters and in Reducing This Award in the Same Amount Because of Snyder's Conflict of Interest with the Debtor.

From our best analysis of Snyder's convoluted argument, we discern that Snyder contends that the bankruptcy court erred in only awarding him $1000 in compensation for his pre-petition bankruptcy services. Apparently, Snyder claims that a majority of his pre- and post-petition bankruptcy services also constitute "tax matters," are reasonable and necessary expenses, and are secured by the Note and Deed of Trust as Snyder has previously argued. Therefore, pursuant to the Bankruptcy Compensation Statement that provides that Snyder be paid at the rate of $120 per hour, Snyder claims that he should have received compensation based on this hourly rate. However, we find Snyder's argument to be without merit.

As already discussed, we determined that Snyder's lien was only valid as to his pre-petition tax services. The bankruptcy court properly concluded that any other non-tax services constituted unsecured pre-petition debt. The bankruptcy court, under § 329(a), had the power to review Debtor's transactions with his attorney Snyder. If the bankruptcy court found that such compensation paid or promised to be paid to the attorney exceeded the reasonable value of such services, the court could cancel any

-12-

such agreement or order the return of any such payment to the extent the payment was excessive.  See § 329(b).  Considering the lack of complexity and the customary legal fees that are awarded in this community for planning, preparing, and filing the necessary schedules and petition for a Chapter 7 case, the bankruptcy court did not err in awarding Snyder $1000 as a reasonable fee for his pre-petition bankruptcy services.

Snyder also disputes the bankruptcy court's imposition of sanctions against him in the amount of $1000 for a conflict of interest with Debtor pursuant to Rule 9011.  Snyder contends that the bankruptcy court never informed him of this apparent conflict of interest and never gave Snyder an opportunity to defend against this charge, which allegedly violated Snyder's due process rights.  Snyder also contests the court's finding that a conflict of interest existed.[8]  Once again, we disagree.

First, we find that Snyder did have notice that the bankruptcy court could potentially award sanctions against Snyder for a conflict of interest with Debtor.  At the August 24, 1995 hearing before the bankruptcy court, Trustee informed the court and Snyder that he was "investigat[ing] whether grounds exist to file a motion for

---

[8]Snyder also argues that, as the attorney for a debtor in a Chapter 7 case as opposed to an attorney for the estate or a debtor-in-possession, the Bankruptcy Code's ethical standards should not apply to him.  However, we reject this position.  As we previously determined, upon filing of the bankruptcy petition, the unencumbered portion of Debtor's real property became estate property.  Therefore, Snyder must comply with the applicable Code guidelines in order to receive compensation for his post-petition legal services from estate assets.  See In re Independent Sales Corp., 73 B.R. 772, 774-775 (Bankr. S.D. Iowa 1987) (noting that a retainer obtained by the debtor's attorney prior to filing the petition for relief is held in trust to the extent it is for services to be rendered during the case and until allowed by the court and ordered paid pursuant to sections 330 and 331, and further indicating that section 330(a) applies to a Chapter 7 case).  See also Sturgeon State Bank v. Perkey (In re Perkey), 194 B.R. 846, 849-50 (Bankr. W.D. Mo. 1996) (finding, in a Chapter 7 case, that the debtor's attorney must satisfy both the ethical requirements set forth in the Model Rules of Professional Conduct and § 327 of the Bankruptcy Code).

sanctions." Bankr. Hr'g Tr. of August 24, 1995 at 6. On August 31, 1995, Trustee filed a Rule 9011 Motion for Imposition of Sanctions. Finally, Snyder himself admitted in his deposition that he might have an adverse interest with the bankruptcy estate. See Snyder Dep. at 12-13. Therefore, as Snyder clearly had notice and an opportunity to defend against the potential sanctions charge, Snyder's due process rights were not violated.

Turning to the propriety of the bankruptcy court's $1000 sanction against Snyder for his conflict of interest, Rule 9011(a)[9] provides:

> Every petition . . . filed in a case under the Code on behalf of a party represented by an attorney . . . shall be signed by at least one attorney of record. . . . The signature of an attorney or a party constitutes . . . that to the best of the attorney's . . . knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

The language of Rule 9011 closely tracks the language of Fed. R. Civ. P. 11, and cases interpreting Rule 11 are applicable to Rule 9011 cases. See Grunewaldt v. Mutual Life Ins. Co. of New York (*In re* Coones Ranch, Inc.), 7 F.3d 740, 742 n.4 (8th Cir. 1993). "[T]he established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances." *In re* Armwood,

---

[9]We note that Rule 9011 was amended on April 11, 1997, with the amendments having an effective date of December 1, 1997. See 28 U.S.C. 2075, H.R.Doc. No. 70, 105th Cong., 1st Sess. 87- 96 (1997). Because the relevant sanction orders arose under former Rule 9011, amended Rule 9011 does not have implications in the present case.

175 B.R. 779, 788 (Bankr. N.D. Ga. 1994). "We apply an abuse-of-discretion standard of review in all aspects of Rule 11 (and by analogy, Rule 9011) cases." <u>In re</u> <u>Coones</u> <u>Ranch</u>, 7 F.3d at 743.

Applying these standards, we conclude that the bankruptcy court did not abuse its discretion by sanctioning Snyder for his conflict of interest with Debtor. As we previously noted, Snyder's security interest was limited to the value of his pre-petition legal services for tax matters. Snyder's assertion that his lien extended to other matters was not supported by the law or a good faith argument for its modification or reversal. When Snyder argued that his lien extended to his other non-tax services, Snyder's interests directly conflicted with Debtor's interest to pay his non-dischargeable claim to the Internal Revenue Service. It is appropriate to deny or reduce compensation to a professional that represents a party (here, Snyder represented himself as a creditor of Debtor) who has an interest adverse to the bankruptcy estate. <u>See</u> <u>In re</u> <u>Pierce</u>, 809 F.2d at 1362-63. Therefore, we find that the bankruptcy court did not abuse its discretion in sanctioning Snyder for a conflict of interest as Snyder's actions were not reasonable under the circumstances.

### E. The District Court Did Not Err in Sanctioning Snyder for His Frivolous Appeal.

Snyder argues that the district court erred in sanctioning him for his alleged frivolous appeal to the district court, in part,[10] because Trustee's motion failed to comport with Rule 11's requirement that the motion specifically describe the conduct alleged to have violated such rule, and the district court's order failed to make sufficiently detailed findings of fact and conclusions of law. In addition, Snyder asserts

---

[10]Snyder also attempts to characterize Trustee's motion and the district court's order as a "motion and order for attorney's fees and costs" as opposed to a "motion and order for sanctions." However, we reject this argument as completely lacking any merit and not warranting further discussion.

-15-

that his preceding legal arguments demonstrate that the appeal was not frivolous. We disagree.

In the present case, Trustee submitted to the district court a seven page legal brief entitled "Suggestions in Support of Motion for Sanctions." This brief detailed that Trustee was pursuing sanctions against Snyder, pursuant to Rule 9011, because the appeal was not grounded in fact nor by existing law or a good faith argument for an extension, modification, or reversal of the existing law. The Trustee's brief, in short, highlights Snyder's conflict of interest in representing Debtor and in attempting to apply his lien to the non-tax and post-petition legal services. As such, we find that Trustee's motion and brief fully comply with Rule 9011's specificity requirements.

Similarly, we conclude that the district court did not abuse its discretion in granting Trustee's unopposed motion and sanctioning Snyder in the amount of $4,352.80 for Trustee's attorney fees and double costs in defending the frivolous appeal in the district court. Although a more thorough analysis might be illuminating, the district court order adopted Trustee's rationale for the imposition of sanctions by implication and provided Snyder with sufficient notice of the rationale underlying the sanctions. In this case, the district court did not abuse its discretion as sanctions were appropriate because Snyder's appeal was not supported by the evidence nor in conformance with applicable law, nor a good faith argument for its extension, modification, or reversal. As our disposition in this case reveals, Snyder still appears to not understand the law applicable to his case. Therefore, we affirm the district court's order sanctioning Snyder for his frivolous appeal.

## III. CONCLUSION

We have carefully examined each of the remaining contentions raised by Snyder on appeal and find them to be without merit. For the reasons set forth in this opinion, we affirm the bankruptcy court order and district court orders. In addition, we note

-16-

Trustee's request, see Briefs of Appellee at 34 (No. 97-1221) and 12 (No. 97-2300), that we sanction Snyder further in the amount equal to the attorney fees and costs incurred by the bankruptcy estate in defense of Snyder's frivolous post-judgment motions and appeal to this court. Pursuant to Rule 38 Fed. R. App. P., we must provide reasonable notice to counsel that we are contemplating sanctions and give counsel an opportunity to respond. See id. (the 1994 Advisory Committee Notes indicate that a statement in a party's brief moving for sanctions does not provide sufficient notice). Therefore, Snyder shall submit a response to the question of the propriety of sanctions imposed by this court against him to the clerk of this court within fifteen days of the date of this opinion. Trustee shall also submit to the clerk of this court within fifteen days an accounting of attorney's fees and costs incurred in this appeal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-