GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
I agree with the Court that CNH’s bid of $113,000 failed to create a legally enforceable contract and that the sale to Gittaway Ranch for $166,500 should not be set aside. Furthermore, I would affirm the district court’s conclusion that CNH fell short of establishing a genuine issue of material fact regarding whether its attorneys’ fees were both reasonable and authorized by the trust deed. But while some of CNH’s arguments to this court may not have been expressed with ideal clarity, I conclude that CNH did not waive the argument that its inspection costs should be included in its secured claim pursuant to § 506(b), see supra n. 2. The district court analyzed this matter incorrectly, and I would reverse and remand to the district court for further proceedings. I also would vacate the award of sanctions.
CNH did not waive its claim to inspection costs under § 506(b). In order to understand the arguments CNH presented to this court, it is first necessary to understand the district court ruling to which CNH was responding. As the district court noted in its January Memorandum and Order (“January Order”),
Section 506(b) of the Bankruptcy Code governs whether fees, costs, or charges become part of a creditor’s allowed se *908 cured claim. See 11 U.S.C. § 506(b). “To recover attorney’s fees under section 506(b) ... a creditor must establish: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney’s fees.”
(alteration in original) (quoting First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200, 201 (8th Cir.1997)). The district court refused to incorporate CNH’s attorneys’ fees into CNH’s secured claim because CNH failed to bring forth evidence creating a genuine issue of material fact as to whether the attorneys’ fees were reasonable and whether they were authorized under the trust deed as “reasonably necessary or incidental to improve[] or protect[]” the property.[4] Despite recognizing the applicability of the § 506(b) framework to the attorneys’ fees issue, the district court inexplicably determined that CNH’s analogous request also to incorporate its inspection costs into its secured claim should be analyzed using an entirely different framework. Instead of applying the three-part test from First Western Bank & Trust v. Drewes, the district court examined whether the inspections violated the automatic stay or were avoidable post-petition transfers. The court first concluded that any inspection costs “that occurred prior to July 15, 2010,” the date the automatic stay was lifted, were “void as a violation of the automatic stay.” As to any inspection costs incurred after this date, the court made an alternative holding and determined that they also should be excluded as avoidable post-petition transfers “to the extent such [inspection costs] are not void as a violation of the automatic stay.”[5]
In its brief to this court, CNH first argued that the district court reached the wrong result under the three-part test from First Western Bank & Trust with regard to its request to incorporate attorneys’ fees into its secured claim under § 506(b). CNH then built on this discussion and argued that the district court had further erred by failing to apply this test to its claim for inspection costs. As CNH observed, “[c]ontrary to the law allowing for the collection of such fees as part of the secured claim, the trial court found that such inspection fees were an attempt to encumber the property without specific permission from the bankruptcy court.” CNH then cited to the portion of the January Order in which the district court concluded that none of the inspection costs could be incorporated into CNH’s secured claim because they were either a violation of the automatic stay or avoidable post-petition transfers, or both. CNH pointed out that under the district court’s approach, secured creditors would have to obtain “successive relief from the stay for each individual step taken” to “enforce his or her rights under a trust deed.” Even after the stay was lifted, the consequence of the district court’s holding would be to require secured creditors to specifically “seek additional relief from the stay” if they hoped to subsequently recover costs authorized by a trust deed. CNH went on to argue that the correct approach was for the district court to instead analyze whether the inspection costs could be included in *909 its secured claim under the three-part test in First Western Bank & Trust.
When taken together, this section of CNH’s brief challenges both of the district court’s stated reasons for excluding all of the inspection costs from CNH’s secured claim. In deeming this argument “waived,” the Court demands a level of clarity and detail from CNH that is unprecedented. CNH argued that the district court analyzed the issue incorrectly, it cited to the portion of the district court’s opinion that it disputed, and it described the purportedly proper framework of analysis, including a case citation. This is all that is required under Federal Rule of Appellate Procedure 28(a)(9)(A)[6] and accordingly was sufficient to preserve for this court’s consideration the question of whether CNH could include its inspection costs in its secured claim pursuant to § 506(b), or whether these inspection costs were, as the district court concluded, violations of the automatic stay or avoidable post-petition transfers.
Furthermore, I agree with CNH that the district court’s analysis of the inspection costs issue was fundamentally flawed. First, CNH’s incurring of inspection costs were not violations of the automatic stay.
[T]he automatic stay does not bar all post-petition charges on real property, as over-secured creditors are permitted by § 506(b) to add post-petition interest to their secured claims as well as other charges authorized by a creditor’s security agreement, including post-petition attorney fees. The concept thus exists in the Bankruptcy Code itself for reducing the bankruptcy estate’s equity in real property, thereby eliminating any notion that the status quo must be preserved at all costs.
Mutual Ins. Co. of New York v. Cnty. of Fresno (In re D. Papagni Fruit Co.), 132 B.R. 42, 46 (Bankr.E.D.Cal.1991) (internal citation omitted). The district court seemed to be under the impression that where a trust deed authorizes a secured creditor to recover certain costs and fees and a creditor takes actions during (and even after) the pendency of the automatic stay that are potentially eligible to be included in his secured claim, then this conduct necessarily encumbers the bankruptcy estate in violation of the automatic stay. This court has found creditors to have violated an automatic stay only where they have taken steps to circumvent the bankruptcy court’s control of the bankruptcy estate. See Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Sys., Inc.), 108 F.3d 881, 884 (8th Cir.1997) (finding that collecting foreclosure sale proceeds violates automatic stay); Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 774-75 (8th Cir.1989) (finding violation of automatic stay where creditor failed to turn over to the bankruptcy estate equipment belonging to debtor); Small Business Admin. v. Rinehart, 887 F.2d 165, 167-68 (8th Cir.1989) (finding violation of automatic stay where creditor put a hold on funds the debtor was entitled to receive instead of turning the funds over to the bankruptcy estate as requested by the trustee); United States v. Ketelsen (In re Ketelsen), 880 F.2d 990, 993 (8th Cir.1989) (finding violation of automatic stay where creditor directed IRS to offset a portion of a couple’s income tax return against their debt).
The case the district court relied on in reaching its conclusion, In re Stark, 242 B.R. 866 (Bankr.W.D.N.C.1999), reflects the foregoing line of cases. In In re *910 Stark, a secured creditor conducted inspections during the pendency of an automatic stay. While the stay was still in effect, the creditor attempted to collect inspection fees from the debtors by billing them directly, rather than filing a request with the court to include the fees in its secured claim. Id. at 872. Although this type of creditor activity may encumber the bankruptcy estate, the Robertses have not contended that CNH attempted to collect inspection costs from them. A secured creditor, such as CNH here, that expends its own funds for inspections and then merely seeks reimbursement authorization from a court pursuant to § 506(b) has not violated the automatic stay. The only question for the court is whether those costs and fees are properly included in the secured claim.
This critical distinction between “actions taken by creditors outside the bankruptcy court forum” and “legal actions taken within the bankruptcy court,” In re Sammon, 253 B.R. 672, 681 (Bankr.D.S.C.2000), reflects one of the primary purposes of the automatic stay provision, to “protect[ ] creditors by averting a scramble for the debtor’s assets and promoting instead ‘an orderly liquidation procedure under which all creditors are treated equally,’ ” Farley v. Henson, 2 F.3d 273, 274 (8th Cir.1993) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1970), reprinted in 1978 U.S.C.C.A.N. 5787, 6297). The automatic stay should not be used to prevent creditors from presenting their competing claims to a court. Cf. Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348, 356 (5th Cir.2008) (“The Bankruptcy Code allows creditors to assert any claim, even if that claim is contingent, unmatured, or disputed. A debtor may object to the claim; the bankruptcy court then determines whether to allow the claim.” (internal citation omitted)). The consequence of the district court’s approach is that if a creditor seeks to incorporate attorneys’ fees and other costs into its secured claim — as it is entitled to do under § 506(b) — but ends up being wrong about whether it is actually entitled to those costs, then this error becomes a sanctiona-ble violation of the automatic stay. See 11 U.S.C. § 362(k). If the district court’s interpretation were accepted, it would place a substantial roadblock in the way of actions authorized elsewhere in the Bankruptcy Code. See United States v. Inslaw, Inc., 932 F.2d 1467, 1474 (D.C.Cir.1991) (ruling that although “the literal words of § 362(a) might actually” render the creditor’s action a violation of the automatic stay, “[f]or obvious reasons, however, courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code”).
The district court also erred when it determined that at least some of CNH’s inspections were avoidable post-petition transfers. This portion of the district court’s analysis primarily relied on Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750 (8th Cir.1997). In that case, the debtor spent bankruptcy estate funds during the pendency of an automatic stay by incurring ongoing legal services pursuant to a pre-petition representation agreement that was secured by a trust deed. Id. at 753-55. By continuing to utilize his attorney’s services post-petition, the debtor was necessarily draining the bankruptcy estate because the attorney was to be paid for his work from the proceeds of the sale of the debtor’s house. Id. at 753. In re Mahen-dra is inapposite because it did not involve, as here, a secured creditor requesting a court to authorize it to recover its previously expended inspection costs. In this situation, there is no transfer of property from the bankruptcy estate unless and until a court authorizes inclusion of the secured creditor’s costs and fees under § 506(b). As this court noted in In re Mahendra, once the automatic stay went *911 into effect, “[o]nly the bankruptcy court could control the further encumbrance of the estate property.” Id. at 755. By filing a claim for its inspection fees with the district court, CNH was respecting the court’s control of the estate property. If the inspection costs were improper, the appropriate response was for the district court to refuse to add them to CNH’s secured claim.
The analysis, therefore, should turn on whether the inspection fees, like the attorneys’ fees, can be recovered under § 506(b) because they “are reasonable and provided for in the agreement under which the claim arose.” In re White, 260 B.R. 870, 880 (8th Cir. BAP 2001) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). I would remand to the district court to consider if CNH created a genuine issue of material fact as to whether the inspection costs were of a reasonable amount and whether they were authorized by the trust deed.
The district court also awarded sanctions to the Robertses after determining that they suffered actual damages attributable to CNH’s supposed violations of the automatic stay. The only violation of the automatic stay identified by the district court was the costs CNH incurred for inspections. Because the district court erred in concluding that CNH’s incurring of inspection costs were violations of the automatic stay, and a violation of the automatic stay is a necessary prerequisite for awarding sanctions under § 362(k)(l), I would vacate the award of sanctions. On remand, the district court would be free to address the Robertses’ alternative basis for sanctions under FRCP 37(a), (c).
For these reasons, I respectfully dissent.

. As mentioned above, I agree with the district court’s analysis on this point.

. The district court’s May Memorandum and Order regarding sanctions further indicates that the district court believed inspections conducted after the automatic stay was lifted in July could nonetheless be violations of the automatic stay. The district court noted that “CNH violated the automatic stay when it inspected, and thereby attempted to further encumber, property of the bankruptcy estate during the months of May through August of 2010.” (emphasis added)

. "The appellant's brief must contain ... the argument, which must contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.”